UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LALISHKA RAMIREZ,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　Case No. 8:18-cv-2539-T-CPT

ANDREW M. SAUL,
Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded for further proceedings.

I.

The Plaintiff was born in 1976, has a master's degree in industrial hygiene, and has past relevant work experience as an EHS coordinator, a health and safety representative, an industrial hygienist, and a safety officer. (R. 365, 370-71). In January 2013, the Plaintiff applied for DIB, alleging disability as of March 23, 2010,

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit.

due to fibromyalgia, colitis, osteopenia, arthralgias, an arrythmia, abdominal tenderness, gastroesophageal reflux, mitral valve prolapse, irritable bowel syndrome, and a lesion on the plantar nerve. (R. 354, 369). The Social Security Administration (SSA) denied her application both initially and on reconsideration. (R. 254, 273).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on June 30, 2016. (R. 52-73). The Plaintiff was accompanied at that hearing by a non-attorney representative,[2] who orally agreed to amend the Plaintiff's onset date to August 4, 2012, in light of a prior unfavorable decision issued on August 3, 2012. (R. 56, 234, 256). The Plaintiff testified during the hearing (R. 59-67, 70-71), as did a vocational expert (VE) (R. 68-72).

In a decision dated August 24, 2016, the ALJ found that the Plaintiff: (1) met the insured status requirements through December 31, 2015, and had not engaged in substantial gainful activity since her originally alleged onset date of March 23, 2010;[3] (2) had the severe impairments of fibromyalgia, systemic lupus erythematosus (SLE), non-specific colitis, and chronic headaches; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform light work, except that she could only frequently crouch, crawl, and climb ladders, ropes,

---

[2] It appears that the Plaintiff's non-attorney representative worked with Plaintiff's counsel. (R. 31, 54).

[3] Because the Plaintiff did not formally amend her alleged onset date following the ALJ hearing, the ALJ elected not to accept her oral amendment and, instead, determined that *res judicata* attached to the time period from that alleged onset date through the date of the prior unfavorable decision—i.e., March 23, 2010, through August 3, 2012. (R. 31).

2

and scaffolds; and (5) based in part on the VE's testimony, could perform her past relevant work as an industrial safety technician. (R. 33-46). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 46).

The Appeals Council denied the Plaintiff's request for review. (R. 4-8). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[4] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)).[5] Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment

---
[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot perform the work identified by the Commissioner. *Id.* In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating

whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "[W]hile the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to [his] legal conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

III.

The Plaintiff argues on appeal that the ALJ erred (1) by giving little weight to her treating doctor's opinions, and (2) in discrediting her testimony. (Doc. 26 at 5-18). Upon a thorough review of the record and the parties' submissions, the Court finds that the Commissioner's decision is not supported by substantial evidence, and that the case must be reversed and remanded.

A.

In assessing an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)).[6] "'Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do

---

[6] Although this regulation has been amended effective March 27, 2017, the new regulation only applies to applications filed on or after that date. *See* 20 C.F.R. § 404.1520c. Because the Plaintiff's application was submitted in January 2013, the older version of the regulation governs here.

despite [her] impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)).

If a doctor's statement rises to the level of a "medical opinion," an ALJ must state with particularity the weight given to that medical opinion and the reasons therefor. *Id.* at 1179. In rendering this determination, an ALJ must consider: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's area of specialization. 20 C.F.R. § 404.1527(c). While an ALJ is required to consider each of these factors, it is not necessary that he explicitly address them in his decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

The Regulations set forth three tiers of sources for medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing 20 C.F.R. § 404.1527(a)(2), (c)(1)-(2)).

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004)). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or

inconsistent with the physician's own medical records. *Phillips*, 357 F.3d at 1240-41; *see* 20 C.F.R. § 404.1527(c)(2) (stating that "controlling weight" is given to a treating physician's opinion if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."). If an ALJ finds that the treating physician's medical opinion should be given less than substantial or considerable weight, the ALJ must clearly articulate reasons showing good cause for discounting the opinion, and those reasons must be supported by substantial evidence. *Hargress*, 883 F.3d at 1305-06.

While an ALJ must usually give substantial or considerable weight to a treating physician's opinion, the opinion of a one-time examining doctor—such as a physician who performs a consultative examination (CE)—merits no such deference. *Crawford*, 363 F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). An examining doctor's opinion, however, is usually accorded greater weight than that of a non-examining physician. *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

In the end, irrespective of the nature of a physician's relationship with a claimant, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Id.*; *accord Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding.").

In this case, there were four physicians who rendered opinions regarding the Plaintiff's physical capabilities and limitations during the relevant time period: (1) Gil

A. Hermida Perez, M.D., an internist who conducted a CE of the Plaintiff in April 2013 at the Commissioner's request; (2) Rafael Queipo, M.D., and Eileen Zayas, M.D., two state agency medical consultants who reviewed the Plaintiff's claim file in October 2013 and May 2014, respectively, also at the Commissioner's request; and (3) Amarilis Torres, M.D., the Plaintiff's treating rheumatologist who saw the Plaintiff seventeen times between March 2013 and May 2016.[7]

The one-time examining doctor, Dr. Perez, opined that the Plaintiff had limitations in the areas of "walking intermediate to long distances, standing or sitting for prolonged periods in a row, heavy lifting, and carrying." (R. 747). The non-examining state agency consultants, Drs. Queipo and Zayas, opined that the Plaintiff could perform light work with restrictions to frequent crouching, crawling, and climbing ladders, ropes, and scaffolds. (R. 248-50, 267-70).

As for the Plaintiff's treating physician, Dr. Torres, she prepared three medical source statements addressing the Plaintiff's functional limitations, each of which essentially deemed the Plaintiff unable to perform the demands of sedentary work.[8] (R. 847-54, 895-99). In particular, Dr. Torres found that, due to the Plaintiff's

---

[7] While the record also contains the medical opinions of two other treating doctors (both of whom found the Plaintiff was unable to perform any work, these opinions predate the pertinent period and were rejected by the ALJ in any event. (R. 43). The Plaintiff does not challenge the ALJ's decision not to consider these opinions, and the Court therefore does not address the matter here.

[8] Dr. Torres's statements consist of a September 2013 "Medical Source Statement of Ability to do Work-Related Activities (Physical)," a September 2013 "Fibromyalgia Residual Functional Capacity Questionnaire," and a June 2016 "Lupus (SLE) Residual Functional Capacity Questionnaire." (R. 847-54, 895-99).

fibromyalgia, SLE, and other impairments, she had limitations relating to lifting, sitting, standing, walking, reaching, handling, fingering, feeling, and postural activities, and that she also required a sit/stand option, as well as five to ten-minute breaks throughout the day. (R. 847-54, 895-99). In addition, Dr. Torres provided a statement that the Plaintiff was incapable of engaging in gainful employment.[9] (R. 817).

While the ALJ found that the Plaintiff's fibromyalgia and SLE constituted severe impairments (R. 34, 42, 44), he decided to give "little weight" to Dr. Torres's opinions. In support of this decision, the ALJ determined that Dr. Torres's opinions conflicted with: (1) her own treatment notes, which stated that the Plaintiff "has had a very good response to the treatment prescribed;" (2) the opinion of the state agency consultative examiner, Dr. Perez;[10] and (3) the opinions of the two non-examining, state agency medical consultants, Drs. Queipo and Zayas.[11] (R. 44). On the other

---

[9] The ALJ discounted Dr. Torres's disability assessment, and the Plaintiff wisely does not appear to challenge that determination on appeal. *See* 20 C.F.R. § 404.1527(d)(1); *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013) (stating that it is the Commissioner, not a claimant's physician, who determines whether a claimant is statutorily disabled).

[10] The ALJ actually stated that Dr. Torres's opinions were not consistent with the opinions of the examiners—plural—even though Dr. Perez was the only doctor who conducted a consultative *physical* examination. (R. 44). It appears that the additional examiner to whom the ALJ was referring was Luis Toro, M.D., a psychiatrist who performed a consultative *psychiatric* examination of the Plaintiff in September 2013. (R. 43-44). As the Plaintiff does not seem to contest the weight the ALJ gave to the opinions of Dr. Toro—or, for that matter, any other healthcare professional who assessed the Plaintiff's mental limitations—the Court does not address this aspect of the ALJ's decision.

[11] The ALJ also found that Dr. Torres's opinion on the Plaintiff's inability to handle stress on the job did not comport with the medical records. The Plaintiff does not challenge that finding here, and, accordingly, the Court need not address it.

9

hand, the ALJ gave significant weight to the opinions of Drs. Perez, Queipo, and Zayas, finding they were consistent with each other and fully substantiated by the medical evidence. (R. 43, 45).

The Plaintiff now argues that the ALJ's reasons for rejecting Dr. Torres's opinions are legally and factually unsupported. (Doc. 26 at 5-17). The Court agrees.

To begin, there is insufficient evidence to sustain the ALJ's finding that Dr. Torres's opinions are inconsistent with her own notes documenting the Plaintiff's "very good response to treatment prescribed." In an effort to buttress that finding, the ALJ cited Dr. Torres's treatment notes from August 2013 (Ex. 23F) and November 2015 (Ex. 29F). (R. 44). Neither record, however, provides an adequate basis for the ALJ's outright rejection of Dr. Torres's three medical opinions regarding the Plaintiff's functional capacity.

Contrary to the ALJ's suggestion, these treatment notes do not evidence that the Plaintiff's fibromyalgia and/or SLE-related symptoms were controlled by medication or other types of treatment or that her functioning significantly and consistently improved as a result of treatment. Moreover, the level of improvement in the Plaintiff's joint and musculoskeletal pain varied depending on the medications prescribed and her ability to tolerate their side effects. In addition, the significant improvement in joint pain that she did experience was often short-lived because the most helpful medications resulted in substantial side effects, and, in any event, the record does not indicate that she was ever symptom-free.

Furthermore, Dr. Torres's August 2013 treatment note documented only that the Plaintiff had an "excellent response to steroids" after taking a two-day course of prednisone for a non-symptomatic rash on her legs. (R. 839). Given the Plaintiff's response to this medication, Dr. Torres decided to treat the Plaintiff's SLE-related pain with a disease-modifying drug (DMD), specifically methotrexate (MTX), but observed that the Plaintiff failed to show an improvement in her symptoms. *Id.*

And, while Dr. Torres's November 2015 treatment note reflects that the Plaintiff's joint pain and/or inflammation improved when taking the drug CellCept, Dr. Torres also commented that the Plaintiff experienced significant side effects as a result. (R. 881-82). Despite this improvement, Dr. Torres continued to report exam findings for the Plaintiff of decreased grip strength bilaterally; diffuse vertebral and paravertebral muscle tenderness, and markedly decreased range of motion in the cervical spine; diffuse vertebral tenderness to palpation and bilateral paravertebral muscle tenderness in the thoracic spine; diffuse vertebral tenderness to palpation in the lumbar spine; and bilateral sciatic notch tenderness. (R. 840-41). The November 2015 treatment note additionally documents the Plaintiff's history of responses to several different DMDs, which included varying levels of improvement in joint functioning as well as significant side effects.[12] (R. 881-82). Dr. Torres observed that some of the

---

[12] In particular, Dr. Torres noted that the Plaintiff detected some improvement in her joint symptoms with MTX, but that it was discontinued due to side effects—namely, nausea, fatigue, headaches, visual blurring, anorexia after injection, sores in her mouth, and excessive menstrual bleeding. *Id.* Dr. Torres next prescribed Imuran and Plaquenil, which the Plaintiff reported worked very well for the joint pain in her hands. *Id.* Dr. Torres reported, however, that Imuran became ineffective and CellCept was added. *Id.* The Plaintiff subsequently

11

side effects—including excessive menstrual bleeding, depression, and stomatitis (a sore or inflammation in the mouth)—had all improved greatly with medication but that the Plaintiff's multiple areas of pain continued. (R. 881). Dr. Torres concluded:

> [The Plaintiff] had been showing improved evidence of disease activity regarding this inflammatory arthritis on our previous treatment with Plaquenil and Imuran as combination DMDs, which [she] tolerated well but whose benefits she exceeded. Her Imuran was substituted for CellCept at 500mg po bid [i.e., by mouth twice-a-day] and she will continue with this medication at an increased dose of 750mg po bid. In an attempt to provide her with added relief we have also issued an Rx [i.e., a prescription] for a short course of Prednisone as well as an Rx for fentanyl patches at 12 mg every 3 days.

(R. 885).

In sum, these records from August 2013 and November 2015 do not support the ALJ's determination that Dr. Torres's reports of the Plaintiff's varying responses to treatment for her fibromyalgia and SLE are inconsistent with Dr. Torres's opinions regarding the Plaintiff's functional abilities and limitations.[13] *See Sharfarz*, 825 F.2d at 280 (concluding that statement in doctor's progress note that claimant was doing

---

reported that CellCept "helped her joints and muscles significantly" but asked to discontinue it because she believed it was causing headaches, scalp tenderness, visual changes, insomnia, and nightmares. (R. 882). Dr. Torres then prescribed Arava, which the Plaintiff tolerated but with significant regression in her joints. *Id.* As a result, Dr. Torres restarted the Plaintiff on CellCept, which again helped her joints but caused dyspepsia, nausea, and diarrhea. *Id.*

[13] Earlier in his decision, the ALJ stated that the Plaintiff experienced improvements in headaches and depression with treatment (Doc. 42), but those improvements were unrelated to her fibromyalgia and SLE-related physical limitations identified by Dr. Torres. The ALJ also noted that the Plaintiff reported improvement in her median nerve symptoms after having carpal tunnel release surgery. (R. 43). The hand surgery progress notes, however, indicate that the Plaintiff had "*not* noticed improvement in median nerve symptoms." (R. 972) (emphasis added).

"significantly better" did not provide a sound basis to discredit opinion of doctor who treated claimant for six months).

The Commissioner's contention that the ALJ gave little weight to Dr. Torres's opinions because those assessments were inconsistent with both her own treatment records *and* the Plaintiff's good response to treatment is unpersuasive. (Doc. 26 at 23). A fair reading of the ALJ's decision simply does not support this assertion. Aside from noting the Plaintiff's "good response to treatment," the ALJ did not identify in his decision any other purported discrepancies between Dr. Torres's treatment notes and her opinions with respect to the Plaintiff's functional abilities. While the Commissioner attempts to add substance to the ALJ's reasoning by reviewing the whole of Dr. Torres's treatment notes and pointing out other purported inconsistencies (R. 20-24), the ALJ did not mention those findings in Dr. Torres's records anywhere in his decision. And the Court cannot now rely upon the Commissioner's *post-hoc* rationalization as a basis for discounting Dr. Torres's assessments. *See Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010); *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011).

The ALJ's conclusion that Dr. Perez's opinion provides good cause for rejecting Dr. Torres's opinions is similarly not supported by substantial evidence.[14] As the Plaintiff urges, Dr. Torres is a specialist in rheumatology, the area of expertise that

---

[14] The Court, however, disagrees with the Plaintiff's blanket assertion that the findings and/or opinions of an examining doctor can never constitute good cause to discount a treating doctor's opinion.

addresses conditions such as fibromyalgia and SLE, whereas Dr. Perez is an internist. Dr. Perez's report is also less detailed than Dr. Torres's treatment notes, and there is no indication that Dr. Perez palpated the Plaintiff's joints, measured her grip strength (despite concluding that her ability to handle objects was not impaired), or considered any of Dr. Torres's records. Moreover, Dr. Perez examined the Plaintiff before she was diagnosed with SLE and did not have the benefit of reviewing Dr. Torres's evaluations. Although the ALJ states that Dr. Perez's opinion is "supported by the medical evidence," he does not address what medical evidence buttresses the one-time examining doctor's opinion or explain how that evidence substantiates it. (R. 43). Without more, the ALJ's statement is insufficient to support his wholesale rejection of Dr. Torres's opinions based on Dr. Perez's evaluation.

In addition, there are aspects of Dr. Torres's opinions that do not conflict with Dr. Perez's opinions. For example, Dr. Torres's assessment that the Plaintiff would require a sit/stand option at will and could not walk/sit/stand for long periods of time is not inconsistent with Dr. Perez's determination that the Plaintiff had limitations for "walking intermediate to long distances, standing or sitting for prolonged periods in a row."

Conversely, there are components of Dr. Perez's opinions that do not comport with the ALJ's findings. The Court notes in this regard that, while the ALJ gave significant weight to Dr. Perez's assessment that the Plaintiff was restricted in her ability to walk intermediate to long distances or to stand or sit for prolonged periods, the ALJ nonetheless found that the Plaintiff had the RFC for light work. Such an

14

RFC, however, generally requires standing or walking for a total of approximately six hours of an eight-hour workday.  *See* Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6 (S.S.A. 1983); Program Operations Manual System (POMS) § DI 25001.001(A)(43).  And, although the term "prolonged" in Dr. Perez's opinion is not defined, the SSA recognizes that, by definition, light exertional work involves "prolonged" standing or walking.  *See* SSR 83-12, 1983 WL 31253, at *4 (S.S.A. 1983) (recognizing that an individual who "must alternate periods of sitting and standing . . . is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work"); *see also Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989) (recognizing that a claimant that is incapable of prolonged standing or walking cannot perform light work).

The opinions of the non-examining doctors, Drs. Queipo and Zayas, likewise do not constitute good cause for rejecting the assessments of a treating physician like Dr. Torres.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); *Johns v. Bowen*, 821 F.2d 551, 554 (11th Cir. 1987); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).  Nor does the Commissioner contend otherwise.  Rather, he argues that the regulations have changed since *Broughton* to clarify that the opinions of non-examining sources may override opinions from treating or examining sources where the record supports the non-examining source's opinion.  (Doc. 26 at 24-25); *see Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 743 (11th Cir. 2011) ("In sum, because the ALJ articulated good cause for discounting the opinions of [plaintiff's] treating and examining doctors

15

and because the consulting doctor's opinion was consistent with the medical record, including the treating and examining doctors's own clinical findings, the ALJ did not err in giving more weight to the consulting doctor's opinion.").

That is not the case here, however. The ALJ did not give more weight to the opinions of the two non-examining doctors, Drs. Queipo and Zayas, *after* articulating good cause to reject Dr. Torres's opinions. Rather, the ALJ found support for his decision to discount Dr. Torres's opinions based on his conclusion that they were inconsistent with Drs. Queipo and Zayas's assessments. Such reasoning is fatally flawed and runs counter to well-settled law governing the matter.[15] *See Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (providing that a non-examining doctor's opinion does not constitute the good cause needed to reject a treating doctor's opinion) (citing *Broughton*, 776 F.2d at 961-62); *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 750 (11th Cir. 2018) (providing that the opinions of non-examining doctors do not amount to good cause for rejecting the opinion of a treating physician) (citing *Lamb*, 847 F.2d at 703); *Martinez v. Acting Comm'r of Soc. Sec.*, 660 F. App'x 787, 791 (11th Cir. 2016) ("'Good cause' is not present where the treating physician's opinion is contradicted by the report of a non-examining, reviewing physician.")

---

[15] The Court notes in this regard that, while the non-examining doctors reviewed Dr. Perez's opinion, it does not appear they considered either of Dr. Torres's September 2013 medical source statements or were aware of her diagnosis of SLE. (R. 248-50, 267-68). Further, although Drs. Queipo and Zayas credited the Plaintiff's diagnosis of fibromyalgia, they found that the objective evidence did not support her alleged symptoms (R. 249, 269), even though individuals diagnosed with fibromyalgia typically do not display objective findings. *See Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 63 (11th Cir. 2010) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

(citing *Lamb*, 847 F.2d at 703); *Martz v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 959 (11th Cir. 2016) (recognizing that a non-examining doctor's opinion, by itself, does not constitute good cause for giving less weight to a treating doctor's opinion) (citing *Johns*, 821 F.2d at 554).

In conclusion, given the Plaintiff's undisputed diagnoses of fibromyalgia and SLE, the fact that Dr. Torres—a treating physician—offered opinions based on a longitudinal picture of the Plaintiff's conditions, and the lack of any contrary, supported medical opinions, the Court finds that the ALJ's stated reasons for discounting Dr. Torres's assessments were not based on substantial evidence. Accordingly, the case must be remanded for further consideration of the medical record, including the opinion evidence.

B.

As noted above, the Plaintiff's second claim of error is that the ALJ erred in his evaluation of her testimony. (Doc. 26 at 17-18). In light of the above findings, however, the Court need not consider this argument at this juncture. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised); *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record). That argument turns on a number of issues that are better addressed once it is clear that the ALJ has properly evaluated the medical evidence of record.

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is reversed and remanded for further proceedings before the Commissioner.

2. The Clerk is directed to enter Judgment in the Plaintiff's favor and to close the case.

3. The Court retains jurisdiction on the matter of attorney's fees and costs pending further motion.

DONE and ORDERED in Tampa, Florida, this 27th day of March 2020.

*Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record